**Opinion issued June 6, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00911-CV**

————————————

**M.D. ANDERSON CANCER CENTER, Appellant**

**V.**

**BING WANG, M.D., Appellee**

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-31980**

## MEMORANDUM OPINION

This accelerated interlocutory appeal arises out of an employment-discrimination lawsuit filed by Bing Wang, M.D. against his former employer, M.D. Anderson Cancer Center. M.D. Anderson filed a plea to the jurisdiction, seeking

dismissal on the basis that Wang did not timely exhaust his administrative remedies. The trial court denied M.D. Anderson's jurisdictional plea. M.D. Anderson appeals.

We set aside the trial court's order and dismiss Wang's lawsuit.

## BACKGROUND

Dr. Wang was a clinical faculty member of the M.D. Anderson Cancer Center for several years. On February 18, 2020, M.D. Anderson issued a letter to Wang informing him that it would not renew or extend his faculty appointment beyond the date of August 31, 2020, citing "ongoing performance and professionalism issues" as the reason for nonrenewal. The letter explicitly stated it served as Wang's written notification of the nonrenewal of his employment. It also advised that he could appeal the nonrenewal in accordance with M.D. Anderson's faculty appeal policy.

Wang did appeal. But M.D. Anderson upheld the nonrenewal of his faculty appointment and informed him of its final decision in an April 29, 2020 letter. The letter stated that this final decision concluded the internal faculty appeal process.

On September 11, 2020, Wang filed a charge of discrimination with the United States Equal Employment Opportunity Commission. In it, Wang alleged that M.D. Anderson terminated him on the basis of his disabilities and retaliated against him after he requested a reasonable accommodation regarding these disabilities.

On February 28, 2022, the EEOC issued a notice to Wang advising him of his right to sue M.D. Anderson within 90 days based on his charge of discrimination.

2

On May 27, 2022, Wang sued M.D. Anderson. In his live pleading, he alleges that M.D. Anderson's failure to renew or extend his clinical faculty appointment was the result of unlawful discrimination based on his disabilities in violation of the Texas Labor Code. Wang further alleges that M.D. Anderson retaliated against him after he made a request for reasonable accommodation of these disabilities.

M.D. Anderson filed a plea to the jurisdiction claiming that the doctrine of sovereign immunity bars Wang's suit against it. In its plea, M.D. Anderson argued that Texas law required Wang to exhaust his administrative remedies, including by filing a charge of discrimination with either the EEOC or the Texas Workforce Commission within 180 days of the February 18, 2020 letter informing him that M.D. Anderson would not renew his faculty appointment. M.D. Anderson further argued that this administrative exhaustion requirement was a jurisdictional prerequisite to suit. Because Wang did not file his administrative charge of discrimination until September 11, 2020, which was more than 180 days after he received the letter, M.D. Anderson argued that Wang's claim must be dismissed.

Wang responded that the 180-day deadline should be calculated from the date on which M.D. Anderson made a final decision in his internal faculty appeal on April 29, 2020, rather than from the date of the initial letter informing him that M.D. Anderson would not renew or extend his clinical faculty appointment. When

measured from this later date, Wang reasoned, his administrative charge of discrimination was timely filed within the 180-day jurisdictional deadline.

The trial court denied M.D. Anderson's jurisdictional plea without stating the basis for its ruling. M.D. Anderson appeals from the trial court's denial of the plea.

## DISCUSSION

The issue before us is a narrow one, and the material facts are undisputed. Texas law requires a person who desires to bring a lawsuit alleging an unlawful employment practice, like workplace disability discrimination or retaliation, to first exhaust his administrative remedies by filing a charge of discrimination with the Texas Workforce Commission or United States Equal Employment Opportunity Commission within 180 days of the allegedly discriminatory employment decision. The parties agree that, under the circumstances of this case, the 180-day deadline began to run at the very latest once Wang received unequivocal notice of his termination. But they disagree as to what constitutes unequivocal notice. M.D. Anderson contends that its February 18, 2020 letter informing Wang of the decision not to renew his faculty appointment provided unequivocal notice of termination. If M.D. Anderson is correct, then Wang's administrative charge of discrimination was not timely filed within the 180-day deadline and his lawsuit is jurisdictionally barred. In contrast, Wang contends that he did not have unequivocal notice of his termination until M.D. Anderson notified him of its April 29, 2020 final decision

4

concluding its internal faculty appeal process and upholding the decision not to renew his faculty appointment. If Wang is correct, then he timely filed his administrative charge of discrimination, and his suit is not jurisdictionally barred.

## Standard of Review

We review de novo a trial court's ruling on a plea to the jurisdiction premised on sovereign immunity because whether the trial court has subject-matter jurisdiction is a question of law. *Hoff v. Nueces Cty.*, 153 S.W.3d 45, 48 (Tex. 2004) (per curiam). To the extent we must interpret statutory provisions affecting our jurisdiction, our review remains de novo because the proper interpretation of a statute is a question of law. *Davis v. Morath*, 624 S.W.3d 215, 221 (Tex. 2021).

## Applicable Law

M.D. Anderson Cancer Center is a part of the University of Texas System. TEX. EDUC. CODE § 65.02(a)(11). As a part of the University of Texas System, M.D. Anderson is a division of the state government and has sovereign immunity from suit to the same extent as the state absent a constitutional or legislative provision waiving its immunity. *Pepper Lawson Horizon Int'l Grp. v. Tex. S. Univ.*, 669 S.W.3d 205, 210 (Tex. 2023) (per curiam); *Deville v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 634 S.W.3d 324, 329 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

The Texas Commission on Human Rights Act, which is codified in the Texas Labor Code, prohibits unlawful employment practices, including discrimination on

5

the basis of disability and retaliation against an employee for opposing such discrimination. TEX. LAB. CODE §§ 21.051, 21.055, 21.105. These legislative provisions operate as a limited waiver of sovereign immunity with respect to state employers. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012).

Under the TCHRA, administrative complaints about unlawful employment practices "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." TEX. LAB. CODE § 21.202(a). Noncompliance with this deadline requires dismissal of the administrative complaint, and the making of a timely administrative complaint is a mandatory jurisdictional prerequisite to a civil suit alleging unlawful employment practices by a state employer. *See id.* §§ 21.202(b), 21.208, 21.252, 21.254, 21.256; TEX. GOV'T CODE § 311.034; *Chatha*, 381 S.W.3d at 503–04, 513–14 (holding professor's suit for employment discrimination against state university was jurisdictionally barred due to failure to timely file administrative complaint); *Drew v. City of Houston*, 679 S.W.3d 779, 784 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (explaining that exhaustion of administrative remedies in context of employment discrimination claims requires, among other things, filing of administrative complaint with either TWC or EEOC by 180-day deadline and that failure to do so operates as jurisdictional bar to suit).

The 180-day deadline begins to run "when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996) (per curiam); *see also Chatha*, 381 S.W.3d at 503 (noting that deadline begins to run "when a discriminatory employment decision is made—not when the effects of that decision become manifest in later events"). When the discriminatory act is the unlawful termination of employment in particular, the 180-day deadline runs from the date when the employer informed the employee that he "would be terminated." *Specialty Retailers*, 933 S.W.2d at 493. In other words, the relevant date for calculating the deadline is when the employer notifies the employee of its intent to terminate him, not necessarily the date on which his employment actually ends. *See id.* at 492–93 (holding that 180-day deadline ran from date that company told employee she would be terminated if her disability leave lasted more than year); *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 492 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that 180-day deadline began to run by latest when employer told employee she could transfer to another department or be fired).

A notice of termination generally must be unequivocal to trigger the 180-day deadline, unless a reasonable employee would otherwise understand that his employment had been terminated under the circumstances. *See Johnson & Johnson Med. v. Sanchez*, 924 S.W.2d 925, 928 (Tex. 1996) (agreeing that for purposes of

wrongful termination claim asserted under Texas Workers' Compensation Act limitations begins to run on receipt of unequivocal notice of termination or when reasonable employee should know her employment is terminated); *Myers v. Sam Houston State Univ.*, No. 01-04-00667-CV, 2005 WL 1910817, at *2–4 (Tex. App.—Houston [1st Dist.] Aug. 11, 2005, no pet.) (mem. op.) (indicating requirement that termination notice be unequivocal applies in employment discrimination suits under TCHRA); *see also Tex. Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. denied) (applying *Sanchez*'s holding in age discrimination class action). But a notice of termination is not equivocal merely because it is conditional in nature or specifies a future date as the date of termination. *See Reeves v. Houston Lighting & Power Co.*, 4 S.W.3d 374, 377–78 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding notice stating employee would be terminated by specific date if he did not obtain leave of absence or long-term disability by then was unequivocal).

## Analysis

Our court answered the question presented in this appeal in a prior discrimination lawsuit against M.D. Anderson. In that suit, an administrative assistant alleged sex discrimination and retaliation, and M.D. Anderson moved to dismiss her suit on the basis that she did not exhaust her administrative remedies by filing an administrative complaint by the jurisdictional 180-day deadline. *Univ. of*

8

*Tex. – MD Anderson Cancer Ctr. v. Phillips*, No. 01-18-00221-CV, 2018 WL 6379503, at *1–3 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op.).

An administrator issued the assistant a letter giving notice of M.D. Anderson's intent to terminate, and M.D. Anderson contended the 180-day deadline began to run on that date. *Id.* at *2–3. But the letter noted the assistant would be allowed to provide a written response and indicated the termination decision was not yet final. *Id.* at *2. A month later, the administrator issued a second letter, communicating that M.D. Anderson had made a final decision to terminate the assistant, and the assistant contended the 180-day deadline began to run on that date. *Id.* at *2–3. The assistant eventually filed a charge of discrimination with the TWC and EEOC. *Id.* at *2. But this administrative complaint met the 180-day deadline only if the assistant was correct that the date of the final termination decision was controlling. *Id.* at *3.

Our court held that M.D. Anderson's first letter providing notice of intent to terminate the assistant's employment triggered the 180-day deadline as a matter of law. *Id.* at *5–7. We explained that the deadline began to run on the date the assistant was informed by M.D. Anderson of its intent to terminate her employment, not when that decision later culminated in termination, based on the Supreme Court's decision in *Specialty Retailers*. *Id.* at *5–6. There, the Supreme Court held the 180-day deadline starts "when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." 933 S.W.2d at 493.

Much like Wang in this appeal, the administrative assistant in *Phillips* posited that the first letter giving notice of intent to terminate did not control because it was not unequivocal. 2018 WL 6379503, at \*6. The assistant reasoned that the first letter was not unequivocal because it conditioned her termination on a written response from her and was not a final decision as to whether she would or would not be terminated. *Id.* Our court summarily rejected this position as being inconsistent with *Specialty Retailers*. *Id.* at \*6–7.

We are bound to follow our prior decision in *Phillips*. But even if this was an issue of first impression, we would decide the issue in the same way as *Phillips*.

Texas courts have long rejected the idea that a termination notice is equivocal merely because it is conditional in some way. *See Specialty Retailers*, 933 S.W.3d at 492–93 (holding 180-day deadline was triggered no later than when employee was told she would be fired if her leave lasted more than one year); *Davis*, 226 S.W.3d at 492 (holding 180-day deadline was triggered no later than when employee was told she could transfer or be fired). Thus, M.D. Anderson's notice of termination was not equivocal merely because Wang's termination was subject to internal appeal. *See, e.g.*, *Alamo Cmty. Coll. Dist. v. Ryan*, No. 04-17-00196-CV, 2017 WL 4942858, at \*2–3 (Tex. App.—San Antonio Nov. 1, 2017, no pet.) (mem. op.) (holding letter that stated faculty appointment would not be renewed triggered 180-day deadline, rejecting counterargument that deadline should instead be calculated

10

from date internal appeal was denied, reasoning that decision conveyed in letter was not tentative, and explaining that appeal can only be had from decision already made).

Nor is a decision equivocal unless it is final and unappealable. *See* EQUIVOCAL, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "equivocal" in relevant part as "ambiguous" or "[h]aving more than one meaning or sense"); *see, e.g.*, *Galveston Cty. v. Cooley*, No. 14-23-00109-CV, 2024 WL 564191, at *2, *4–5 (Tex. App.—Houston [14th Dist.] Feb. 13, 2024, no pet.) (mem. op.) (holding 180-day deadline was triggered even though internal appeal process remained ongoing and decision to terminate therefore had not yet become final at that time). In the context of termination, a notice of termination is equivocal only if it is ambiguous—that is, reasonably susceptible to more than one interpretation, such that an employee might not understand he was being fired. *See Sanchez*, 924 S.W.2d at 928 (holding limitations triggered by unequivocal notice of termination or other circumstances from which reasonable employee should understand she is being terminated). M.D. Anderson's first letter to Wang informing him that it would not be renewing or extending his clinical faculty appointment was not ambiguous in this sense.

Wang relies on *County of El Paso v. Flores*, for the alternative propositions that the 180-day deadline either did not begin to run until the internal appeal process

concluded or that the appeal process creates a question of fact on the issue. 677 S.W.3d 31 (Tex. App.—El Paso 2023, pet. denied). But *Flores* is inapposite.

In *Flores*, a terminated county employee sued the county for disability discrimination, among other things, in connection with his termination. *Id.* at 38. Initially, while the employee was on medical leave, his supervisor notified him that he was terminated effective immediately. *Id.* at 40. But when the employee contacted the county's human resources representative, the representative told the employee that he remained employed. *Id.* at 41. The representative explained to the employee that the county could not legally terminate him while he was on medical leave. *Id.* Afterward, the employee's supervisor sent a second letter stating that the employee remained employed by the county for the time being. *Id.* After the employee returned from medical leave and the county investigated his discrimination claims, the county decided his complaints were meritless and his supervisor sent him a third letter informing him that he was now terminated. *Id.*

As in this appeal, the timeliness of the employee's administrative charge of discrimination and the trial court's subject-matter jurisdiction over his later discrimination suit turned on when the 180-day deadline to make an administrative complaint began to run. The county argued that the deadline began to run when the employee's supervisor sent the first letter while he was on medical leave. *Id.* at 43. Unsurprisingly, the court of appeals disagreed, noting that the human resources

director contradicted the employee's supervisor as to his employment status. *Id.* at 43–44. In addition, the court of appeals agreed with the employee that, as a matter of logic, he could not have been fired on both the date of the first letter and the date of the third letter, each of which purported to terminate his employment. *Id.* at 44. Thus, the court of appeals concluded, either the employee was terminated when he received the third letter or else there was a fact issue as to when he was terminated. *Id.* Either way, the trial court properly denied the county's jurisdictional plea to the extent the plea was premised on the TCHRA's 180-day jurisdictional deadline. *Id.*

*Flores* represents an instance in which the employer's notice of termination either was not unequivocal, given the supervisor's multiple contradictory letters, or else other circumstances—specifically, the human resources representative's statements contradicting the supervisor's initial letter about termination—made it questionable whether a reasonable employee would know whether or when he was terminated. Thus, the supervisor's first letter did not trigger the 180-day deadline to file an administrative complaint. *See Sanchez*, 924 S.W.2d at 928 (agreeing that for purposes of wrongful termination worker's compensation claim limitations begins to run on receipt of unequivocal notice of termination or when reasonable employee should know her employment was terminated). Here, no comparable facts exist.

Consistent with precedent, we hold that the 180-day deadline for Wang to file a charge of termination-related discrimination with the TWC or EEOC was triggered

13

by M.D. Anderson's February 18, 2020 letter informing Wang that it would not renew or extend his faculty appointment. It is undisputed that Wang did not file a charge of discrimination within 180 days of his receipt of this letter. Thus, Wang did not timely exhaust his administrative remedies, and the trial court lacks subject-matter jurisdiction to hear his lawsuit for disability discrimination and retaliation.

We sustain M.D. Anderson's sole issue.

## CONCLUSION

We set aside the trial court's order denying the jurisdictional plea, and we render judgment dismissing Wang's lawsuit for lack of subject-matter jurisdiction.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Hightower.